## MICHAEL KEITH HINES *v.* STATE OF MARYLAND

[No. 448, September Term, 1976.]

*Decided February 3, 1977.*

The cause was argued before DAVIDSON, MELVIN and MASON, JJ.

*John R. Salvatore,* with whom was *Michael G. Day* on the brief, for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *John S. Hollyday, State's Attorney for Washington County,* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

Michael K. Hines (appellant) was tried by a jury in the Circuit Court for Washington County (Ottinger, J. presiding), and on 7 November 1975 was convicted of murder committed during a storehouse burning, Md. Code Ann. Art. 27, § 409; and murder committed during a storehouse breaking, Art. 27, § 410. He was also convicted of storehouse burning, attempted storehouse burning, and storehouse breaking. Concurrent life sentences were imposed for the felony murder convictions. A twenty year sentence for storehouse burning and a two year sentence for attempted storehouse burning were imposed to run consecutively to the felony murder sentences. A ten year consecutive sentence for storehouse breaking was also imposed.

On 23 June 1975 a sprinkler system and fire alarm were automatically activated at the E. J. Fennell Company in Hagerstown, Maryland. Upon responding, the fire department found that fourteen separate fires had been set inside the building. The lifeless body of the night watchman, Roy Rowland, whose skull had been crushed, was found inside. An arson investigation supported the conclusion that all fourteen fires had intentionally been set. Further investigation by the police revealed that an exterior window had been broken, apparently as a means of access, and office files ransacked. Also found at the scene was a note, written on an envelope, reading "WELL HIT AGAEN. THE FIRE BIGG" (sic). The printing on this note was identified at trial as being that of the appellant.

At trial, two prosecution witnesses, Richard Roser and Nelson Bowers, both testified that the appellant admitted clubbing "someone" at the E. J. Fennell plant. Another witness for the State, Carl Stablein, testified that while incarcerated in a nearby jail cell, the appellant related his involvement in the incident. Stablein testified that the

appellant told him he had broken a window and entered the Fennell plant; that an accomplice struck the night watchman, and that he started some fires. Bowers also testified to an admission by appellant that when he left the building "the place was burning".

Appellant now attacks his convictions claiming:

1) The court erred by not removing the case from Washington County.

2) The *corpus delicti* of murder was not proven because the victim's body was not identified.

3) There was insufficient evidence to support a conviction of storehouse burning.

4) The convictions and sentences for both felony murder counts were duplicitous.

5) The crime of attempted storehouse burning merged into the conviction for storehouse burning.

We shall consider these contentions separately.

## I

## "DID THE COURT ERR IN REFUSING TO REMOVE THE CASE FROM THE TRIAL JURISDICTION?"

Appellant claims that Judge Rutledge abused his discretion by refusing to grant his motion for removal. He maintains that because stories concerning the crimes and photographs of the appellant in handcuffs appeared in two local newspapers and on a local UHF television news broadcast, the potential jurors were inflamed, influenced, and incapable of rendering an impartial verdict.

The burden is on the party seeking removal of a trial to demonstrate:

"... that he has been 'prejudiced by adverse publicity and that the *voir dire* examination of prospective jurors . . . would not be adequate to assure him a fair and impartial jury' ". *Van Meter v. State*, 30 Md. App. 406, 410, 352 A. 2d 850 (1976);

quoting *Sizemore v. State*, 5 Md. App. 507, 511, 248 A. 2d 417 (1968).

Following a hearing on the suggestion for removal Judge Rutledge denied the motion. After reviewing the newspaper stories, the film clips and photographs, Judge Rutledge found:

> ". . . that any prejudice to the petitioner that may have resulted from any of the pictures, scripts or article, can be, by proper examination upon *voir dire*, eliminated so as to guarantee the petitioner a fair trial in Washington County".

The transcript of the *voir dire* examination is not included in the record. In its absence, there is nothing before us from which we can determine whether the *voir dire* examination did or did not result in the selection of an impartial jury, "untainted" by the pre-trial publicity. *Van Meter v. State, supra.* See, Md. Rule 1026 a (2). On the record before us we are unable to say that the appellant met his burden of proving that a fair trial could not be obtained, or that Judge Rutledge abused his discretion in denying removal of the trial. Md. Rule 738 b; *Van Meter v. State, supra; Cleveland v. State,* 12 Md. App. 712, 280 A. 2d 520 (1971).

## II

## "DID THE COURT ERR IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL FOR COUNTS 4 AND 6 AT THE CONCLUSION OF THE STATE'S CASE?"

Appellant next contends that because the identity of the victim named in the indictment was not proven, the *corpus delicti* of the murder with which he was charged was not established. This contention is without merit.

No direct evidence was presented which would establish the identity of the victim as Roy Calvin Rowland. It is, however, well settled that the identity of the victim of a crime may be established by circumstantial evidence. *Watson v.*

*State,* 208 Md. 210, 117 A. 2d 549 (1955); *Jones v. State,* 188 Md. 263, 272, 52 A. 2d 484 (1947); *Smith v. State,* 31 Md. App. 106, 355 A. 2d 527 (1976).

There was ample evidence presented in the instant case which would support an inference that the victim was Mr. Rowland. The medical examiner testified that he performed an autopsy on the body of Roy Calvin Rowland. Carl Stablein testified to the admissions of the appellant that he and two accomplices broke into the E. J. Fennell plant, wrestled the night watchman to the ground, and hit him in the head with a pipe. William Fennell, Vice-President of the E. J. Fennell Company, testified that Roy Rowland was working as a night watchman for the company in June, 1975. In addition, a wallet was found near the victim's body. Although it contained no positive identification of the victim, there was evidence that it did contain Roy Rowland's pay check stubs.

In reviewing the evidence presented in a jury trial, the function of an appellate court is limited. In *von Lusch v. State,* 31 Md. App. 271, 356 A. 2d 277 (1976), reversed on other grounds. 279 Md. 255, 368 A. 2d 468 (1977), we reiterated the rule:

> "In reviewing the sufficiency of the evidence in a jury trial, we do not inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt. Rather it is our limited function to determine whether the evidence shows directly or supports a rational inference of the facts to be proved, from which the jury could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. [citations omitted]." 31 Md. App. at 279-280.

*See also, Tillery v. State,* 3 Md. App. 142, 238 A. 2d 125 (1968). We hold that the evidence in the instant case supports a rational inference that the body found in the Fennell plant was that of Roy Calvin Rowland, the alleged victim.

## III

## "WAS THE EVIDENCE INSUFFICIENT TO SUPPORT THE CONVICTION OF ARSON IN COUNT 2?"

Count of the indictment charges the appellant with the statutory crime of wilfully and maliciously setting fire to and burning "the manufacturing plant and warehouse of the E. J. Fennel Co., Inc." See Md. Code Ann. (1976 Repl. Vol.), Art. 27, § 7. In addition to the *mens rea,* an indispensable element of the crime, as it is with the common-law crime of arson, is proof of a burning of the building involved. "If there is the slightest burning of any part of the building, the offense is complete". *Fulford v. State,* 8 Md. App. 270, 259 A. 2d 551 (1969). Appellant argues that there is no evidence that the building itself was burned. We agree and shall therefore reverse the conviction under Count 2 of the indictment. If the building was burned, even "slightly", the State made no attempt to show it. None of the pictures introduced in evidence even purport to show that any part of the building was burned and no witness testified to any such burning.

The State argues that evidence that "the place was full of smoke" coupled with appellant's extrajudicial statement to the witness Bowers that "the place was burning when he [appellant] left", was sufficient proof of this element of the *corpus delicti.* We can not agree.

The deputy fire chief who investigated the alleged "arson" testified that the building's sprinkler system had been activated; that he arrived at the building within a few minutes thereafter; that he was unable to enter the building until the smoke was cleared away; that upon entering "we found fourteen different fires, set fires"; that all the fires were out when he entered; and that the fires had been set in "open areas" of the building with "materials that were already on hand, combustible materials, cloth, paper and wood". There is no evidence that anything other than the "combustible materials" was actually burned.

> "Merely 'putting fire into or towards a house, however maliciously, if either by accident or timely prevention the fire do not take, and no part be

burned, does not amount to arson at common law'. Nor will this offense result from the burning of chattels in or about the building, if the fire is not communicated to any part of the structure itself. Thus setting fire to paper in a drying loft is not arson if no part of the house itself is burned." *Perkins on Criminal Law*, 2nd Ed. (1969), p. 221.

There being no evidence that the "set fires" were "communicated to any part of the structure itself" an indispensable element of proof of the *corpus delicti* of the crime charged in Count 2 of the indictment was missing.

## IV

### "WERE THE CONVICTIONS AND SENTENCES FOR THE TWO COUNTS OF FELONY MURDER DUPLICITOUS?"

In view of our holding that the evidence is insufficient to sustain appellant's conviction of storehouse burning, it follows that his conviction of felony murder under count 4 of the indictment must also be reversed. This is so because the underlying felony alleged in count 4 is storehouse burning. It is therefore unnecessary to consider appellant's argument concerning the "duplicity" of his convictions and sentences under the two felony murder counts. We cannot refrain from commenting, however, that it is difficult to conceive how it is legally possible to be convicted and sentenced for twice murdering the same person. Under the present state of medical science, we think the State would be hard put to prove that a murder victim died twice, regardless of the manner or means of effecting the "first" death. See *Stansbury v. State*, 218 Md. 255, 146 A. 2d 17 (1958); *Wood v. State*, 191 Md. 658, 62 A. 2d 576 (1948).

## V

### "WAS THE CONVICTION FOR ATTEMPTED ARSON (COUNT 3) IMPROPER IN LIGHT OF THE CONVICTION FOR ARSON (COUNT 2)?"

Appellant does not question the sufficiency of the evidence to convict him of attempted storehouse burning under Count

3 of the indictment. He argues that his conviction thereunder "should have merged into the conviction" for the consummated crime of storehouse burning (Count 2). In view of our holding that the conviction under Count 2 must be reversed, the question is moot and need not be decided.

> *Judgments under Count 2 (storehouse burning) and Count 4 (felony murder-storehouse burning) reversed: judgments under Counts 3 (attempted storehouse burning), 5 (storehouse breaking) and 6 (felony murder-storehouse breaking) affirmed.*
>
> *Costs to be paid one-half by appellant and one-half by Washington County.*